■ UDAYAN D. GHOSE, Respondent-Appellant, v CNA REINSURANCE COMPANY LIMITED, Now Known as CX REINSURANCE COMPANY LIMITED, et al., Appellants-Respondents. [841 NYS2d 519]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered April 1, 2005, insofar as denied the motion of the defendant underwriters to dismiss the complaint on grounds of forum non conveniens, unanimously reversed, on the law and the facts, without costs, to grant the motion to dismiss on condition that defendants stipulate to consent to jurisdiction in ei-

ther Australia, England or Bermuda, and to waive any statute of limitations defense, provided that such action is filed within 90 days in the forum selected by plaintiff Udayan Ghose.

Order, same court and Justice, entered March 1, 2006, insofar as it granted Ghose partial summary judgment on his second cause of action to the extent of declaring that the underwriters "are obligated to pay exposure advice cover and to pay defense costs to [Ghose]," and which denied their motion for reargument of the court's prior order entered April 1, 2005, unanimously reversed, on the law, without costs, and the disposition vacated. Appeal of plaintiff Ghose from the same order, to the extent it denied his request for reargument and/or renewal of the denial of a previous request that the underwriters be directed to post a bond in the amount of $60,000,000, unanimously dismissed, without costs, as academic.

Appeal of underwriters from order entered March 8, 2007, which denied their motion for renewal of the April 1, 2005 order denying their request for dismissal on the grounds of forum non conveniens, unanimously dismissed, without costs, as academic.

The defendant underwriters, with the exception of Encon Underwriting, the insurance administrator, are subscribing insurers and reinsurers to a directors' and officers' liability insurance policy covering the period October 11, 1998 to October 11, 1999. All of the subscribing underwriters are also entities organized and existing under the laws of England, which do business in New York.

The policy was issued to nonparty New Cap Reinsurance Corporation Holdings Limited, a Bermudian company. Plaintiff Udayan Ghose, currently a resident of Connecticut, was the chairman and chief executive officer of New Cap Holdings, and in that capacity was covered under the terms of the officers' liability policy. He claims to have been a resident of New York from 1980 through 1998. The policy provided that the law of Bermuda would govern.

New Cap controls two wholly-owned subsidiaries, New Cap Reinsurance Corporation Limited, incorporated in Australia, and New Cap Reinsurance Corporation (Bermuda) Limited, incorporated in Bermuda. Ghose is also chief executive officer of nonparty Eldon Capital, Inc., a "New York-based firm." Eldon was involved in structuring an equity offering for the New Cap companies in 1996.

In late 1998 New Cap sought to raise capital of $50,000,000, and issued a convertible notes offering in Australia. After irregularities in the company's 1998 report were discovered, trad-

ing of the company's stock on the Australian Stock Exchange was suspended in 1999. A liquidator was appointed for New Cap and its Bermudian subsidiary in April 1999 in Bermuda, and a liquidator was also appointed for the Australian subsidiary in Australia in the same month.

Ghose and other New Cap officers and directors were sued in Australia in 2001 by various investors, and allegations were made of, inter alia, violations of Australian securities laws in connection with the convertible notes offering. The action was resolved in favor of Ghose and various other defendants in a judgment rendered March 30, 2007 by the New South Wales Supreme Court. Ghose, however, has also been advised by the Australian liquidator that it will assert a claim against him for insolvent trading.

Ghose has made claims under the insurance policy in conjunction with his discussions with counsel in Australia and New York. New York counsel had been retained in conjunction with ancillary proceedings instituted by the Australian and Bermudian liquidators in the United States Bankruptcy Court for the Southern District, that sought discovery of documents as well as Ghose's testimony.

By letters dated, inter alia, March 31, 2004 and July 6, 2004, the insurers formally notified the officers and directors covered under the policy that they were considering revoking the coverage because of what they deemed to be the inclusion of fraudulent information in a prospectus, and the failure by New Cap to advise the insurers of this deception at the time the policy was renewed.

New Cap Reinsurance had previously (in 1996) obtained a $50,000,000 loan facility from Dresdner Bank through Dresdner's New York branch. By 1998 the debt facility had been reduced to $25,000,000 and was held solely by Dresdner New York. In conjunction with the 1998 restructuring, New Cap Reinsurance had submitted a financial statement to Dresdner. It is the information in this statement that the insurers claim was fraudulent, and provides grounds for rescission, because upon renewal, New Cap Reinsurance omitted information which was essential in assessing the risk.

Two actions were filed in 2004 in Australia against the insurers by Azmin Daya and Peter Aroney, officers of the Australian subsidiary, for a declaration that they were entitled to indemnification under the insurance policy for legal fees they had incurred resulting from the Australian stockholders' action.

On or about May 27, 2004, Ghose commenced this lawsuit, and sought a declaration that, inter alia, the policy may not be

rescinded, and that the underwriters are obligated to indemnify him for all claims that fall within the policy, and for a money judgment in the amount of at least $439,979. The basis of venue was not specified other than to allege that it was proper pursuant to CPLR 503 (a), which permits venue in the county where one of the parties resides, or, if no party resides in the state, in the county chosen by the plaintiff.

The defendants moved to dismiss the complaint pursuant to CPLR 327 on the ground that New York is an inconvenient forum. The motion papers did not recite what forum was more convenient, but, in response to a query from the court at oral argument, counsel stated that the appropriate forum "would seem to be Australia."

By notice dated October 7, 2004 Ghose cross-moved for an order pursuant to Insurance Law 1213 (c) "requiring each defendant insurance company in this action that is not an authorized insurer in this State to post a bond to secure payment of the potential final judgment . . . which may exceed US $60,000,000." Ghose also sought partial summary judgment on his claim for defense costs paid to date.

By order entered April 1, 2005, the court denied both motions. It found that New York had a substantial nexus to the litigation in that Ghose sought "exposure advice" from New York counsel in connection with the claims against him, and in connection with the disclosure directed by the United States Bankruptcy Court for the Southern District. The court further found that the financial statement that is at the heart of the rescission claim was submitted to Dresdner in New York, and that witnesses might be sought from Dresdner New York.

The court also observed that the defendants were multinational businesses which would not suffer undue hardship in defending an action in New York, even though there were already similar actions pending in Australia. It was also determined that even though the policy was governed by Bermuda law, New York courts were fully capable of applying foreign law.

The court rejected Ghose's request for the imposition of a bond, and denied the request for partial summary judgment as premature, on the ground that issue had not yet been joined.

In their appeal from the April 1, 2005 order, defendants argue that the court abused its discretion in not dismissing on inconvenient forum grounds, since all the parties are nonresidents, the policy was issued in London and is governed by Bermudian law, the omission giving rise to the rescission arose outside New York, many documents concerning both the issuance of the policy and the violations of Australian law are outside the juris-

diction, New York was not envisioned as a forum for adjudication of disputes when the policy was issued, and there are already two similar suits pending in Australia.

Ghose responds that he was effectively a New York resident, if not a domiciliary, the loan restructuring with Dresdner occurred in New York, he is seeking reimbursement, in part, for legal fees incurred in New York, there is no other convenient forum for him, New York law governs the rescission claim since the attempt to rescind is based on events that occurred in New York, and documents and witnesses pertaining to the loan transaction are located in New York.

While the disposition of a motion to dismiss on inconvenient forum grounds is a matter for the IAS court's sound discretion, this court may exercise its discretion independently (*Shin-Etsu Chem. Co., Ltd. v ICICI Bank Ltd.*, 9 AD3d 171, 175 [2004]). As has often been stated, the factors in weighing a motion to dismiss include the burden on New York courts, potential hardship to the defendant, the unavailability of an alternate forum, the residence of the parties, and the location of the events giving rise to the transaction at issue in the litigation (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 479 [1984], *cert denied* 469 US 1108 [1985]). The burden remains with the party challenging the forum to demonstrate that the litigation would best be adjudicated elsewhere (*Grizzle v Hertz Corp.*, 305 AD2d 311, 312 [2003]).

While Ghose was purportedly a resident of New York when the policy was issued, but not at the time the lawsuit was commenced, the policy was actually issued to a Bermudian corporation, from an English office. The insured, New Cap, and its Bermudian and Australian subsidiaries, conduct little business in New York. New Cap was actually listed on the Australian stock exchange. Indeed, in a brochure intended for distribution to reinsurance intermediaries, New Cap specifically represented, "The Company does not intend to maintain an office or to solicit, advertise, settle claims or conduct other insurance activities in any jurisdiction other than Bermuda or Australia where the conduct of such activities would require that the Company be so admitted."

All of the defendants are also nonresidents, although they obviously conduct business in New York. Australia is available as a forum, as is England and Bermuda. Suits are also pending in Australia, both against the defendants by other officers, and against New Cap by shareholders.

On the other hand, it is evident that defendants are relying on the false statements provided to Dresdner in connection with

the loan facility which was executed in New York, as the basis for their position that there were omissions. Thus, there is some nexus to New York concerning the transaction that is at the heart of the litigation.

On balance, however, Australia clearly is the more appropriate forum. It is where the company that purchased the policy operates, and other actions are already pending there. Discovery in those matters can be used in this litigation. Furthermore, even if the bank statement was falsely prepared in New York, it would appear that information concerning the company's finances is more likely maintained either in Australia or Bermuda. Overall, there is insufficient justification for New York courts to be burdened with this matter, and the matter should be dismissed on condition that defendants do not challenge jurisdiction or raise the statute of limitations as a defense in the new forum chosen by Ghose.

Ghose's appeal of that part of the order denying his request to have a bond posted is thus rendered academic. We note, however, that Insurance Law § 1213 (a) applies only to situations involving "policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state." The purpose of the statute is, inter alia, "to assure that a foreign carrier's funds will be available in this State to satisfy any potential judgment" (*Levin v Intercontinental Cas. Ins. Co.*, 95 NY2d 523, 527 [2000]). Thus, inasmuch as the policy was not issued or delivered in New York, the section is not applicable.

Defendants also appeal from a March 1, 2006 order, which, inter alia, granted Ghose's renewal motion for partial summary judgment on his request to recover the costs of the exposure advice he sought, and those already incurred in his defense of the underlying claims. In view of the dismissal of the complaint, the grant of summary judgment cannot be sustained. We note, however, that if the complaint were not being dismissed on grounds of inconvenient forum, the interim award of defense costs would not be disturbed. New York law requires that a judicial order is a condition precedent to the cessation of payment for defense costs in circumstances where a claim has already been made (*see Federal Ins. Co. v Kozlowski*, 18 AD3d 33, 39-40 [2005]).

Even if we were to accept underwriters' arguments that Bermuda law applies, we would conclude that the affidavit of the expert submitted by them, and the authority contained within, does not show that, under Bermuda law, an insurer can unilaterally rescind a policy after a claim has been made.

The balance of the parties' arguments is unavailing or

rendered academic as a result of the dismissal of the complaint. Concur—Andrias, J.P., Saxe, Friedman, Nardelli and Malone, JJ.